**In re Anthony Albert WILLIAMS, Debtor.**

**Mary Ann CINC, et al., Plaintiffs,**

**v.**

**Anthony Albert WILLIAMS, Defendant.**

**Bankruptcy No. 87–03671–BKC–AJC.**
**Adv. No. 88–0186–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida.

Feb. 21, 1989.

Chad P. Pugatch, Fort Lauderdale, Fla., for plaintiffs.

William C. Stalions, Fort Lauderdale, Fla., for debtor.

James B. McCracken, Fort Lauderdale, Fla., trustee.

Robert C. Meyer, Haley, Sinagra & Perez, P.A., Robert W. Kelley, Fort Lauderdale, Fla., for trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. JAY CRISTOL, Bankruptcy Judge.

### PREAMBLE

This is an action to determine the dischargeability of a state court judgment arising out of a boating mishap. The action was brought under 11 U.S.C. § 523(a)(6), or alternatively, under § 523(a)(9). This matter is a core proceeding under 28 U.S.C. §§ 1334 & 157, and was heard by adversary proceeding under part VII of the Bankruptcy rules. It is properly before the court, this court having ruled by Memorandum Opinion on June 30, 1988 that the debtor's failure to properly schedule and list this creditor triggered the provisions of 11 U.S.C. § 523(a)(3)(B) as to dischargeability and denied debtor the defense that the claim and objection to discharge were untimely filed.

There was considerable evidence brought before the court as to the intoxication of the debtor, relating to dischargeability under 11 U.S.C. § 523(a)(9). Today's decision that debtor, an experienced boater, wilfully operated his vessel in such a manner as to usurp from his victims the space allocated to them for the navigation of their vessel makes it unnecessary to reach the issue of intoxication and the applicability of § 523(a)(9).

It is the decision of this court that the series of events that transpired at approximately 9:20 P.M. on the 10th day of April, 1983, which events resulted in the death of Viorel Cinc, were the proximate result of the deliberate and wilful intent of the debtor to appropriate to his own use that portion of the waterway set aside by the rules of the road for his victims, and therefore the debt arising therefrom is non-dischargeable under the provisions of 11 U.S.C. § 523(a)(6).

### FINDINGS OF FACT

1. This adversary action arose from a two boat collision on April 10, 1983 which occurred shortly after nine o'clock in the evening at the intersection of the Intercoastal Waterway and the Dania Cutoff Canal in the city of Hollywood, Florida.

2. Boat # 1 was a twenty-four foot Donzi open fisherman owned and operated by the debtor, Anthony Albert Williams, an experienced boater with over forty-five hundred hours and twelve years experience. Boat # 1 contained two occupants, Williams and a passenger, David Roderick.

3. Boat # 2 was a nineteen foot Fiberskiff owned and operated by George Radivoj, now deceased as a result of this accident. In addition to Radivoj, Boat # 2 contained Viorel Cinc, also deceased, and four survivors, John Balan, Radomir Penjevic, Joseph Javanov, and Leo Pank.

4. The impact was nearly head on, and occurred approximately thirty feet from the western shore of the Intercoastal Waterway, either at or slightly north of the southern bank of the intersection of the Dania Cut-off Canal and the Intercoastal.

5. Boat # 2 had been fishing in the ocean off of Port Everglades and was re-

turning to its point of origin at a launching ramp south of the Dania Cutoff Canal. It was proceeding southbound in the Intercoastal Waterway and adhering to the starboard (western) edge of the channel as required by U.S.C.G. Navigation Rule # 9.

6. The exact status of Boat # 1 is less clear. It was definitely northbound in the Intercoastal Waterway and the operator intended to turn westbound into the Dania Cutoff Canal. The passenger, Roderick, stated that they were about half way through their turn into the Dania Cutoff Canal. The operator, Williams, stated that he "was getting ready to make a left turn to head east (sic) in the Dania Cutoff Canal."[1] The Investigating officer's report indicated that the physical damage to the Donzi was such that it indicated a straight and level attitude at impact, i.e., not turning. In addition, the damage to the Fiberskiff indicated that the Donzi passed over her from bow to stern, not from port to starboard. Since the Court feels that the operator is more likely to know what he was doing with the vessel, and in addition, the physical evidence corroborates him, we credit William's statement that he was not yet turning.

7. In this same interview, Williams stated that he was just east of the western bank of the Intercoastal, "about 75 foot" or that he thought that he was "almost in the center, Intercoastal." The passenger, Roderick, testified in state court that they were 30 feet from the western (left) bank of the Intercoastal Waterway, and the waterway was 200 feet wide at that point.

8. As a result of this mishap, Boat # 2's six occupants or their survivors sued Williams.

9. Mary Ann Cinc filed suit against Williams on June 30, 1983, as the personal representative of the estate of Viorel Cinc, deceased, and in her own right.

10. On April 6, 1984, Williams incorporated his business with his wife as the sole director and officer.

11. On September 29, 1986, Williams confessed judgment as to liability and damages in the amount of $1,000,000 in the state court case of *Cinc v. Williams.*

12. On October 13, 1987, Williams declared voluntary Chapter 7 bankruptcy and became the debtor in this case.

13. On April 8, 1988 Mary Ann Cinc filed this adversary proceeding to except the state court judgment in *Cinc v. Williams* from discharge pursuant to 11 U.S.C. § 523.

14. By Memorandum Opinion dated June 30, 1988, this court ruled that the debtor's failure to properly schedule this creditor triggered the provisions of 11 U.S.C. § 523(a)(3)(B) in regard to the § 523(a)(6) allegations, and the claim would be deemed timely filed.

### DISCUSSION OF CONCLUSIONS

According to Prosser, the usual meaning assigned to "wilful," "wanton," or "reckless," according to taste as to the word used, is that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which is usually accompanied by a conscious indifference to the consequences.[2] In order to find a debt non-dischargeable under 11 U.S.C. § 523(a)(6), we must find that the injury was not only "willful," it must be "malicious." Turning to Black,[3] under "malice" we find "A condition of mind which prompts a person to do a wrongful act willfully, that is, on purpose, to the injury of another, or to do intentionally a wrongful act toward another without justification or excuse. A conscious violation of the law which operates to the prejudice of another person." Thus malice would seem to be the higher standard; in-

---

1. Plaintiff's exhibit # 3, Statement of Anthony Albert Williams, page 17, line 9.

2. Prosser & Keeton, *Torts*, § 34 at 213 (5th Ed. 1984).

3. Black's Law Dictionary (5th Ed.1979).

deed, "willful" seems to be the standard of *Tinker v. Colwell,* specifically rejected in the legislative history.[4]

In the instant case, it would appear that the delicts of the debtor meet the definition of malice on several levels. Williams, an experienced and accomplished boater, was driving his boat at a high rate of speed down a narrow channel on the side allocated to opposing traffic while failing to maintain a proper lookout. He violated at least three of the Coast Guard regulations popularly known as the "Rules of the Road," and officially designated COMDINST M16672.2A "Navigational Rules, International–Inland." Thus he violated the laws of navigation in such a way that others were injured. The injury that occurred was precisely the injury that the law sought to prevent. He clearly meets that prong of the test for malice that requires a violation of the law to the detriment of others, but some of our learned brethren would have us go further. They would require that we find that he intended the injury that resulted. He willfully and maliciously broke the law, but he did it with reckless disregard of these consequences. It is difficult to infer that he intended to wreck his boat, injure himself, and kill two men in the other boat. Even though he acted willfully and maliciously, this court does not presume that he intended the extent of the harm that occurred. What he did intend, however, was to appropriate to himself the navigational space allocated to the other boat. They could jolly well get out of his way; that they failed to do so magnified their injury from mere inconvenience to catastrophic damage.

## CONCLUSIONS OF LAW

1. The court takes judicial notice of the COMDINST M16672.2A "Navigational Rules, International–Inland" as the applicable law on a boater operating in the Intercoastal Waterway on April 10, 1983, particularly Rule 9, "Governing Narrow Channels."

4. Senate Report No. 97–139, 97th Cong., 1st Sess. 523 (1981), U.S.Code Cong. & Admin.News 1981, pp. 396, 789.

2. The court does not rule on whether plaintiff carried her burden on the factual issue of intoxication under 11 U.S.C. §523(a)(9). However, given the nature of our decision under §523(a)(6), it is unnecessary to reach that issue.

3. As an experienced boater, Williams knew that the left side of the channel belonged to opposing traffic, yet he persisted in proceeding up the wrong side of the channel at high speed in low visibility. Whether this bravado was enhanced by alcohol is unclear; what is clear is that it was knowing and deliberate. The advantage he hoped to obtain is obscure, perhaps a slightly shorter course on his way, perhaps it was his way of showing disdain for those about him on the water, perhaps he was cutting it close because he was cold and uncomfortable and in a hurry to get back to the comfort of Tugboat Annie's Bar.

4. The court finds Williams' statements as to his whereabouts in the channel less credible. Even so, his statements clearly place him in that portion reserved to opposing traffic, or at best, in a neutral zone to the left of the center of the channel. However, the testimony of his passenger places him within thirty feet of the western bank: not only in the zone reserved for opposing traffic, but imprudently near the opposite side of that zone. Subsequent events proved the passenger right, the investigative report before the court places the scene of the impact thirty feet from the western shore and forty-five feet north of the southern edge of the Dania Cutoff Canal.

5. Having taken their space for his own, Williams cannot now be heard to complain that he did not intend the damage that occurred. He intended to operate at high speed, at night, with poor visibility, in a space set aside for others, and that is sufficient intent to qualify as malice. A little malice is enough.

6. A final judgment will be entered in accordance with these *Findings of Fact and Conclusions of Law.*

House Report No. 95–595, 95th Cong., 1st Sess. 363 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6318.

FINAL JUDGMENT

In conformity with the Findings of Fact and Conclusions of Law of even date, it is

ORDERED

That the court having found that the judgment rendered by the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, in Case Number 83–13884, *Cinc v. Williams*, was the result of a willful and malicious injury by the debtor, the same is hereby

EXCEPTED FROM DISCHARGE.

DONE and ORDERED.